**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 2 7 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| INNOTEX PRECISION LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO.: **1 09-CV-0547** |
| HOREI IMAGE PRODUCTS, INC., ITM CORPORATION, HORST EIBERGER, AND DAVID EIBERGER, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | JURY TRIAL DEMANDED |

**TWT**

## COMPLAINT

Plaintiff Innotex Precision Limited ("Innotex"), through its undersigned counsel, hereby files this Complaint against Defendants Horei Image Products, Inc. ("Horei"), ITM Corporation ("ITM"), Horst Eiberger, and David Eiberger (collectively "Defendants"), stating as follows:

## INTRODUCTION

### A.   Introduction

1.   This is a commercial action in which Innotex seeks recovery against Defendants Horei, ITM, Horst Eiberger, and David Eiberger, individually and

collectively, for the failure to pay for printer cartridges that were sold and delivered by Innotex, for breach of contract in failing to order additional printer cartridges, and for promissory estoppel in selling Innotex components to manufacture printer cartridges that were not paid for or not ordered.

2.     In this case, Innotex asserts the following causes of action:

(1)   Breach of Contract Against Horei (Unpaid Fees);

(2)   Promissory Estoppel Against ITM (Unpaid Fees);

(3)   Breach of Contract Against Horei (ML-2250);

(4)   Promissory Estoppel Against ITM (ML-2250);

(5)   Breach of Contract Against ITM (ML-2250);

(6)   Breach of Warranty Against ITM (ML-2250);

(7)   Breach of Contract Against Horei (ML-1710);

(8)   Promissory Estoppel Against ITM (ML-1710);

(9)   Breach of Contract Against Horei (ML-1610);

(10)  Promissory Estoppel Against ITM (ML-1610); and

(11)  Piercing the Corporate Veil Against All Defendants.

3.     Accordingly, Innotex seeks $3,878,838.41 in damages, as well as additional damages for lost profits, storage costs, interest, and other damages.

**B.     Subject-Matter Jurisdiction**

4.     The Court has subject-matter jurisdiction under 28 U.S.C § 1332(a)(2). Innotex is a citizen of a foreign state, and Defendants are citizens of

a state.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     In addition, the Court also has subject-matter jurisdiction under 28 U.S.C. § 1331.  The action arises under and the governing law is a treaty of the United States, the United Nations Convention on Contracts for the International Sale of Goods.  *See* United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 19 I.L.M. 668, 1489 U.N.T.S. 3.

**C.     Personal Jurisdiction and Venue**

6.     This Court has personal jurisdiction under 28 U.S.C. § 1391(b), and venue is proper.  A substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Georgia, Atlanta Division.

**STATEMENT OF FACTS**

**A.     Parties**

7.     Plaintiff Innotex is a Chinese corporation with its principal place of business at Unit 6, 10/F., Block A, MP Industrial Centre, 18 Ka Yip Street, Chai Wan, Hong Kong, China.  Innotex distributes and sells printer cartridges, printer supplies, and other printing products, among other activities.

8.     Defendant Horei is a Georgia corporation with its principal place of business at 515 Wharton Circle SW, Atlanta, Georgia  30336-2115.  Horei is a

3

wholesaler of printer cartridges, printer supplies, and other products related to the printer industry.

9.      Defendant ITM is a Georgia corporation with its principal place of business at 515 Wharton Circle SW, Atlanta, Georgia 30336-2115. ITM is also a wholesaler of printer cartridges, printer supplies, and other products related to the printer industry.

10.     Defendant Horst Eiberger is a citizen of Georgia with a residence at 1520 Chevron Drive, Atlanta, Georgia 30350-4421. He also maintains a residence in Florida at 1600 Gulf Boulevard, Unit 718, Clearwater Beach, Florida 33767-2973. Horst Eiberger has an ownership interest in and serves in an executive capacity at ITM and Horei, as well as a number of other corporations.

11.     Defendant David Eiberger is a citizen of Georgia with a residence at 1141 Village Court SE, Atlanta, Georgia 30316. David Eiberger has an ownership interest in and serves in an executive capacity at ITM and Horei.

**B.     Unpaid Fees**

12.     From May 15, 2006 to January 17, 2008, Horei, ITM, and Innotex entered into various contractual agreements that took the form of purchase orders and invoices for the purchase and sale of goods. In those contractual agreements, ITM sold to Innotex components for printer cartridges, and Innotex sold to ITM

4

and Horei whole printer cartridges (assembled from the components), as well as other items.

13.    In or about October 2007, at Innotex's urging, personnel from Innotex and personnel from ITM and Horei began working together to reach a settlement of accounts with respect to outstanding balances with regard to purchase orders and invoices. (Arnald Ho Letter, April 22, 2008, Ex. A; *see also* Accounting Chart, Ex. B.)

14.    On or about March 13 and 14, 2008, personnel from Innotex traveled to Atlanta, Georgia to work with personnel from ITM and Horei to review past purchase orders and invoices and to determine any outstanding balances.    The result of these efforts, agreed upon by all parties, is set forth below:

| | |
|---|---|
| Horei due to Innotex | $2,430,128.20 |
| ITM due to Innotex | $2,896,966.49 |
| Innotex due to ITM | $3,604,896.28 |
| Net due to Innotex | $1,722,198.41 |

(Arnald Ho Letter, April 22, 2008, 1, Ex. A.)

15.    There is no dispute that Innotex is owed $1,722,198.41. On April 30, 2008, David Eiberger said in an e-mail, "Both parties agreed and a few days later and confirmed after having checked several postings that the amount of

USD$1,722,198.00 was open in favor of Innotex/Print-Rite." (David Eiberger e-mail, April 30, 2008, Ex. C.)

16.   Before entering into the various purchase orders and invoices that make up the outstanding $1,722,198.41, ITM made a promise to Innotex that Innotex reasonably relied upon to its detriment. The nature of the promise was as follows. ITM would sell Innotex components necessary to assemble whole printer cartridges and other items. If Innotex would buy these components from ITM and assemble the components into whole cartridges or other items, consuming the components, then ITM or Horei would buy the whole cartridges or other items from Innotex at a price above the amount that Innotex paid for the components.

17.   Innotex reasonably relied on this promise by purchasing components from ITM. ITM was the seller of the components.

18.   Innotex reasonably relied on this promise to its detriment because ITM breached this promise. ITM sold the components to Innotex. Innotex then assembled the components into whole cartridges and other items and shipped those cartridges and other items to ITM and Horei. Yet, neither ITM nor Horei ever paid for the whole cartridges and other items delivered by Innotex. Even though ITM and Horei sold these goods to their own customers, ITM and Horei have never paid for the cartridges and other items delivered by Innotex to ITM and Horei.

19.    As a result, Innotex sustained damages.

20.    In addition, Horei's failure to pay the outstanding $1,722,198.41 constitutes a breach of contract for which Innotex is entitled to damages.

21.    As noted above, from May 15, 2006 to January 17, 2008, Horei, ITM, and Innotex entered into various contractual agreements that took the form of purchase orders and invoices for the purchase and sale of goods.  Under these contractual agreements, Innotex delivered goods to Horei for which there is a payment of $1,722,198.41 in favor of Innotex.

22.    Horei breached these contractual agreements by failing to pay Innotex the outstanding $1,722,198.41.

23.    As a result of Horei's breach of contract, Innotex sustained damages in the amount of $1,722,198.41, as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

24.    The contractual agreements comprised of purchase orders and invoices between Innotex and Horei constitute valid and enforceable contracts, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

**C.   ML-2250**

25.   Before October 6, 2007, ITM made a promise to Innotex that Innotex reasonably relied upon to its detriment.  The nature of the promise was as follows. ITM would sell Innotex components necessary to assemble whole ML-2250 printer cartridges.  If Innotex would buy these components from ITM and assemble the components into whole ML-2250 printer cartridges, consuming the components, then ITM or Horei would buy the whole ML-2250 printer cartridges from Innotex at a price above the amount that Innotex paid for the components.

26.   Innotex reasonably relied on this promise by purchasing the ML-2250 components from ITM.  ITM was the seller of the ML-2250 components.

27.   Innotex reasonably relied on this promise to its detriment because ITM breached this promise.  Neither ITM nor Horei purchased or paid for the whole ML-2250 printer cartridges as had been agreed between the parties.  As a result, Innotex sustained damages.

28.   In addition, Horei breached a contract in which it agreed to purchase ML-2250 cartridges, resulting in damages to Innotex.

29.   On October 6, 2007, Horei, ITM, and Innotex entered into a contract called the "Agreement for Samsung ML-2250." (*See* ML-2250 Agreement, Ex.

8

D.) Under this contract, Horei agreed to send to Innotex purchase orders for ML-2250 printer cartridges as follows:

- "11,000 pcs (boxed), US$19.54 per cartridge, ship on November 15, 2007";
- "11,000 pcs (boxed), US$19.54 per cartridge, ship on December 15, 2007";
- "11,000 pcs (boxed), US$19.54 per cartridge, ship on January 15, 200[8]"; and
- "11,000 pcs (boxed), US$19.54 per cartridge, ship on February 15, 200[8]."

(*Id.* at 1.) The contract describes the terms of these orders as "Net 60 Days, DDP Atlanta Warehouse." (*Id.*)

30.   In addition, Horei also agreed that, on February 15, 2008, Horei would send Innotex the following additional purchase orders:

- "5 purchase orders, each for 12,000 ML-2250 cartridges (boxed), US$19.54 per cartridge"; and

- "1 purchase order for 9,900 ML-2250 cartridges (boxed), US$19.54 per cartridge."

(*Id.*)

31.   Accordingly, in total, Horei agreed to issue purchase orders to Innotex for 113,900 ML-2250 cartridges at $19.54 per cartridge for a total of $2,225,606.00. In turn, Innotex agreed to this price. (*Id.*)

32.     Also under this contract, ITM agreed that, after Innotex delivered the

first 44,000 ML-2250 cartridges, ITM would issue to Innotex a credit of

$645,825.80 on the following ML-2250 components that it had sold to Innotex:

- "Samsung ML-2250 Developer Rollers – 72,705 pcs, US$3.78 per roller, total US$274,824.90";

- "Samsung ML-2250 Supply Rollers – 84,780 pcs, US$1.60 per roller, total US$135,648.00";

- "Samsung ML-2250 Primary Charge Rollers – 69,959 pcs, US$3.10 per roller, total US$216,872.90"; and

- "Samsung ML-2250 Toner – 1,540 Kilograms, US $12.00 per Kilogram, total $18,480.00."

(Id.)

33.     ITM further agreed that ITM would "ask Innotex to ship 2,800

Samsung ML-2250 Developer Rollers and 14,800 Samsung ML-2250 Supply

Rollers to a location specified by ITM."  (Id.)

34.     ITM then agreed that, on February 15, 2008, ITM would invoice and

sell to Innotex the following ML-2250 components:

- "Samsung ML-2250 Developer Rollers – 69,905 pcs, US$3.78 per roller";

- "Samsung ML-2250 Supply Rollers – 69,980 pcs, US$1.60 per roller";

- "Samsung ML-2250 Primary Charge Rollers – 69,959 pcs, US$3.10 per roller; and

- "Samsung ML-2250 Toner – 1,540 Kilograms, US$12.00 per Kilogram."

(*Id.*)

35.     The contract, drafted by ITM and Horei, further states: "This Agreement cannot be cancelled." (*Id.*)

36.     Horei breached this contract because Horei failed to issue all of the purchase orders to Innotex for the ML-2250 cartridges. Of the ten purchase orders listed in the contract, Horei issued only two. (*See* Purchase Order No. HE71051, Oct. 25, 2007, Ex. E; Purchase Order No. HE71087, Dec. 19, 2007, Ex. F.)

37.     As a result of Horei's breach of contract, Innotex sustained damages in the amount of $1,795,726.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

38.     ITM also breached this contract because ITM failed to ask Innotex to ship back the 2,800 Samsung ML-2250 Developer Rollers and 14,800 Samsung ML-2250 Supply Rollers to a location specified by ITM.

39.     As a result of ITM's breach of contract, Innotex sustained damages in the amount of $34,264.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

11

40.     The Agreement for Samsung ML-2250 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

41.     Further, ITM breached an implied warranty of fitness and other warranties with respect to the ML-2250 components that it sold to Innotex because certain of these components were defective making it impossible for Innotex to fill the two purchase orders for ML-2250 cartridges sent by Horei.

42.     As a result of receiving these defective components, Innotex could only supply 6,700 out of the 22,000 ML-2250 cartridges requested in these purchase orders and was therefore deprived of the revenue that Innotex would have received had Innotex been able to fill these two purchase orders.

43.     In addition, although Innotex supplied 6,700 ML-2250 cartridges at a cost of $19.54 each for a total of $130,918.00, Horei still has not paid for them.

44.     In the past, ITM accepted responsibility for returning defective ML-2250 and other components to the components' manufacturers. (*See* David Eiberger e-mail, Feb. 27, 2007, Ex. G ["As we have discussed several times . . . we plan to return the defective components to their manufacturers."].) As recently as January 24, 2008, David Eiberger wrote to Innotex's Ian Goddard, saying: "[W]e

first need to return the defective ML2250 rollers to the manufacturer." (David Eiberger e-mail, Jan. 24, 2008, Ex. H.)

45.   As a result of ITM's breach of warranty regarding the ML-2250 components (as well as Horei's failure to pay for the cartridges that were provided), Innotex sustained damages including the cost of the ML-2250 components, lost profits, storage costs, interest, and other damages.

**D.   ML-1710**

46.   Before November 5, 2007, ITM made a promise to Innotex that Innotex reasonably relied upon to its detriment.  The nature of the promise was as follows.  ITM would sell Innotex components necessary to assemble whole ML-1710 printer cartridges.  If Innotex would buy these components from ITM and assemble the components into whole ML-1710 printer cartridges, consuming the components, then ITM or Horei would buy the whole ML-1710 printer cartridges from Innotex at a price above the amount that Innotex paid for the components.

47.   Innotex reasonably relied on this promise by purchasing the ML-1710 components from ITM.  ITM was the seller of these components.

48.   Innotex reasonably relied on this promise to its detriment because ITM breached this promise.  Neither ITM nor Horei purchased or paid for the

whole ML-1710 printer cartridges as had been agreed between the parties.  As a result, Innotex sustained damages.

49.    In addition, Horei breached a contract in which it agreed to purchase ML-1710 cartridges, resulting in damages to Innotex.

50.    On November 5, 2007, Horei, ITM, and Innotex entered into a contract called the "Agreement for Samsung ML-1710."   (*See* ML-1710 Agreement, Ex. I.)   Under this contract, Horei agreed to send to Innotex "an additional PO [purchase order] for 8,300 pcs ML-1710 cartridges for $15.50 each" for a total cost of $128,650.00.   (*Id.*)   Innotex agreed to sell the ML-1710 cartridges at this price.

51.    Also under this contract, ITM agreed to issue Innotex a credit of $501,186.16 for the costs of certain ML-1710 components that it sold to Innotex. (*Id.*)   This credit represented "the difference between ITM[']s billing price to Innotex and ITM[']s cost price" for the ML-1710 components.  (*Id.*)   ITM agreed to issue this credit in exchange for Innotex's reduction of the ML-1710 cartridge price to $15.50 due to an alleged intellectual property concern.  (*Id.*; *see also* Horst Eiberger e-mail, Sept. 15, 2007, Ex. J [discussing the "ML-1710 Close Out Plan"]; David Eiberger e-mail, Sept. 19, 2007, Ex. K ["Without an IP clean Doctor Blade, a price reduction would help us to sell the ML-1710 cartridge in the Latin

14

American markets. We did get a price reduction, it is helpful."]; David Eiberger e-mail, April 30, 2008, second attachment, Ex. L ["Even though the ML-1710 cartridges do violate IP rights, we decided to keep the ML-1710 cartridges as there is some market for this sort of product in Latin/South America."].)

52.    The contract, drafted by ITM and Horei, further states:    "This Agreement cannot be cancelled." (*Id.*)

53.    Horei breached this contract because it never issued a purchase order to Innotex for additional ML-1710 cartridges.  As a result of Horei's breach, Innotex sustained damages in the amount of $128,650.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

54.    The Agreement for Samsung ML-1710 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

**E.    ML-1610**

55.    Before November 5, 2007, ITM made a promise to Innotex that Innotex reasonably relied upon to its detriment.  The nature of the promise was as follows.  ITM would sell Innotex components necessary to assemble whole ML-1610 printer cartridges.  If Innotex would buy these components from ITM and

15

assemble the components into whole ML-1610 printer cartridges, consuming the components, then ITM or Horei would buy the whole ML-1610 printer cartridges from Innotex at a price above the amount that Innotex paid for the components.

56.     Innotex reasonably relied on this promise by purchasing the ML-1610 components from ITM.  ITM was the seller of these components.

57.     Innotex reasonably relied on this promise to its detriment because ITM breached this promise.  Neither ITM nor Horei purchased or paid for the whole ML-1610 printer cartridges as had been agreed between the parties.  As a result, Innotex sustained damages.

58.     In addition, Horei breached a contract in which it agreed to purchase ML-1610 cartridges, resulting in damages to Innotex.

59.     On November 5, 2007, Horei, ITM, and Innotex entered into a contract called the "Agreement for Samsung ML-1610."  (*See* ML-1610 Agreement, Ex. M.)  Under this contract, Horei agreed to "send to Innotex a PO [purchase order] for 11,000 pcs of ML-1610 cartridges." (*Id.*)  At $18.00 per piece, the total amount due to Innotex would have been $198,000.00.  Innotex agreed to sell the ML-1610 cartridges at this price.

60.     Also under this contract, ITM agreed to issue Innotex a credit of $14,494.37 on the costs of certain ML-1610 components that ITM sold to Innotex.

(*Id.*)  This credit represented "the difference of ITM[']s selling price to Innotex and ITM[']s costs" for the ML-1610 components.  (*Id.*)

61.    The contract, drafted by ITM and Horei, also further states:  "This Agreement cannot be cancelled."  (*Id.*)

62.    Horei breached this contract because it never issued a purchase order to Innotex for additional ML-1610 cartridges.  As a result Horei's breach, Innotex sustained damages in the amount of $198,000.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

63.    The Agreement for Samsung ML-1610 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

**F.    Piercing The Corporate Veil**

64.    Horst Eiberger and David Eiberger should be held individually liable for the debts, obligations, and other legal responsibilities of ITM and Horei.  Horst Eiberger and David Eiberger have disregarded the corporate entities of ITM and Horei and have made them mere instrumentalities for transacting their own affairs.

65.    Horst Eiberger and David Eiberger have an ownership interest in and serve in an executive capacity in more than a dozen corporations, including ITM and Horei.  In effect, these corporations are treated as interchangeable entities.  As

17

such, ITM and Horei are also liable for the debts, obligations, and legal responsibilities of the other.

66.   A number of these corporations, including ITM and Horei, share the same office space, warehouse space, and address at 515 Wharton Circle SW, Atlanta, Georgia 30336-2115.

67.   A number of these corporations, including ITM and Horei, share the same ownership, corporate executives, management, and employees.

68.   A number of these corporations, including ITM and Horei, share the same bookkeeping systems, accounting departments, and accounting records.

69.   A number of these corporations, including ITM and Horei, share office equipment, other equipment, and other business materials and systems.

70.   In the past, Horst Eiberger has been sued individually for actions taken by his corporations.  In one prior deposition, Horst Eiberger has referred to his corporations as synonymous with himself, saying: "I was the company." (H. Eiberger Dep., *Toshiba Am. v. Copitech Corp.*, No. 94-2261 (N.D. Ga.), June 2, 1995, 29:22, Ex. N.)

71.   Horst Eiberger has also said about his many corporations: "[A]ll the different companies are closely related and are basically all owned by me and my

children, so there was a lot of cross-ownership."  (H. Eiberger Dep., *Toshiba Am. v. Copitech Corp.*, No. 94-2261 (N.D. Ga.), Oct. 19, 1995, 51:14-19, Ex. O.)

72.    Upon information and belief, many of these corporations, including ITM and Horei, are undercapitalized and have little to no assets.

73.    Upon information and belief, Horst Eiberger and David Eiberger have commingled their assets with those of the corporations, including ITM and Horei.

## CAUSES OF ACTION

## COUNT I.
## BREACH OF CONTRACT AGAINST HOREI (UNPAID FEES)

74.    Innotex incorporates by reference paragraphs 1 through 73.

75.    From May 15, 2006 to January 17, 2008, Horei, ITM, and Innotex entered into various contractual agreements that took the form of purchase orders and invoices for the purchase and sale of goods.   Under these contractual agreements, Innotex delivered goods to Horei for which there is an outstanding payment of $1,722,198.41 in favor of Innotex.

76.    Horei breached these contractual agreements by failing to pay Innotex the outstanding $1,722,198.41.

77. As a result of Horei's breach of contract, Innotex sustained damages in the amount of $1,722,198.41, as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

78. The contractual agreements comprised of purchase orders and invoices between Innotex and Horei constitute valid and enforceable contracts, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

79. By breaching these contractual agreements to pay for delivered goods, Horei violated Articles 53, 54, 57, 58, 59 and 60 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against Horei in the amount of $1,722,198.41 as well as additional damages including but not limited to lost profits, interest, and other damages.

## COUNT II.
## PROMISSORY ESTOPPEL AGAINST ITM (UNPAID FEES)

80. Innotex incorporates by reference paragraphs 1 through 79.

81. Before entering into the various purchase orders and invoices that make up the outstanding $1,722,198.41 owed by Horei to Innotex, ITM made a promise to Innotex that Innotex reasonably relied upon to its detriment.

82.   The nature of the promise was as follows.  ITM would sell Innotex components necessary to assemble whole printer cartridges and other items.  If Innotex would buy these components from ITM and assemble the components into whole cartridges or other items, consuming the components, then ITM or Horei would buy the whole cartridges or other items from Innotex at a price above the amount that Innotex paid for the components.

83.   Innotex reasonably relied on this promise by purchasing components from ITM.  ITM was the seller of the components.

84.   Innotex reasonably relied on this promise, and ITM should have expected that Innotex would have reasonably relied on ITM's promise.  ITM's promise should therefore be enforced to avoid an injustice to Innotex.

85.   Innotex reasonably relied on this promise to its detriment because ITM breached this promise.  ITM sold the components to Innotex.  Innotex then assembled the components into whole cartridges and other items and shipped those cartridges and other items to ITM and Horei.  Yet, neither ITM nor Horei ever paid for the whole cartridges and other items delivered by Innotex.  Even though ITM and Horei sold these goods to their own customers, ITM and Horei have never paid for the cartridges and other items delivered by Innotex to ITM and Horei.

86.   Innotex sustained damages including but not limited to the cost of the unused components, lost profits, storage costs, interest, and other damages.

87.   By breaching its promise to Innotex, ITM violated Article 16 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against ITM for damages including but not limited to the cost of the components, lost profits, interest, and other damages.

## COUNT III.
## BREACH OF CONTRACT AGAINST HOREI (ML-2250)

88.   Innotex incorporates by reference paragraphs 1 through 87.

89.   On October 6, 2007, Horei, ITM, and Innotex entered into a contract called the "Agreement for Samsung ML-2250." (*See* ML-2250 Agreement, Ex. D.) Under this contract, Horei agreed to send to Innotex purchase orders for ML-2250 printer cartridges as follows:

- "11,000 pcs (boxed), US$19.54 per cartridge, ship on November 15, 2007";
- "11,000 pcs (boxed), US$19.54 per cartridge, ship on December 15, 2007";
- "11,000 pcs (boxed), US$19.54 per cartridge, ship on   January 15, 200[8]"; and
- "11,000 pcs (boxed), US$19.54 per cartridge, ship on February 15, 200[8]."

22

(*Id.* at 1.)  The contract describes the terms of these orders as "Net 60 Days, DDP Atlanta Warehouse."  (*Id.*)

90.  In addition, Horei also agreed that, on February 15, 2008, Horei would send Innotex the following:

- "5 purchase orders, each for 12,000 ML-2250 cartridges (boxed), US$19.54 per cartridge"; and

- "1 purchase order for 9,900 ML-2250 cartridges (boxed), US$19.54 per cartridge."

(*Id.*)

91.  Accordingly, in total, Horei agreed to issue purchase orders to Innotex for 113,900 ML-2250 cartridges at $19.54 per cartridge for a total of $2,225,606.00.

92.  Innotex agreed to sell the ML-2250 cartridges at this price.

93.  The contract, drafted by ITM and Horei, further states:  "This Agreement cannot be cancelled."  (*Id.*)

94.  Horei breached this contract because Horei never issued all of the purchase orders to Innotex for the ML-2250 cartridges.  Out of ten purchase orders, Horei issued only two.  (*See* Purchase Order No. HE71051, Oct. 25, 2007, Ex. E; Purchase Order No. HE71087, Dec. 19, 2007, Ex. F.)

23

95.    As a result of Horei's breach of contract, Innotex sustained damages in the amount of $1,795,726.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

96.    The Agreement for Samsung ML-2250 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

97.    By breaching the Agreement for Samsung ML-2250, Horei violated Articles 53, 54, 57, 58, 59, and 60 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against Horei in the amount of $1,795,726.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

## COUNT IV.
## PROMISSORY ESTOPPEL AGAINST ITM (ML-2250)

98.    Innotex incorporates by reference paragraphs 1 through 97.

99.    Before October 6, 2007, ITM made a promise to Innotex.  The nature of the promise was as follows.  ITM would sell Innotex components necessary to assemble whole ML-2250 printer cartridges.   If Innotex would buy these components from ITM and assemble the components into whole ML-2250 printer cartridges, consuming the components, then ITM or Horei would buy the whole

ML-2250 printer cartridges from Innotex at a price above the amount that Innotex paid for the components.

100. Innotex reasonably relied on this promise, and ITM should have expected that Innotex would have reasonably relied on ITM's promise. ITM's promise should therefore be enforced to avoid an injustice to Innotex.

101. Innotex reasonably relied on ITM's promise to its detriment because ITM breached this promise. Neither ITM nor Horei purchased or paid for the whole ML-2250 printer cartridges as had been agreed between the parties.

102. Innotex sustained damages including but not limited to the cost of the unused ML-2250 components (believed to be approximately $1,103,454.86), lost profits, storage costs, interest, and other damages.

103. By breaching its promise to Innotex, ITM violated Article 16 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against ITM for damages including but not limited to the cost of the unused ML-2250 components (believed to be approximately $1,103,454.86), lost profits, storage costs, interest, and other damages.

## COUNT V.
## BREACH OF CONTRACT AGAINST ITM (ML-2250)

104. Innotex incorporates by reference paragraphs 1 through 103.

25

105. On October 6, 2007, Horei, ITM, and Innotex entered into a contract called the "Agreement for Samsung ML-2250." (*See* ML-2250 Agreement, Ex. D.) Under this contract, ITM agreed that it would "ask Innotex to ship 2,800 Samsung ML-2250 Developer Rollers and 14,800 Samsung ML-2250 Supply Rollers to a location specified by ITM." (*Id.*) In other words, ITM agreed to accept return of 17,600 rollers and to refund Innotex the total price of $34,264.00.

106. Innotex agreed to return the Samsung ML-2250 Developer Rollers and the Samsung ML-2250 Supply Rollers to ITM for a total of $34,264.00.

107. The contract, drafted by ITM and Horei, further states: "This Agreement cannot be cancelled." (*Id.*)

108. ITM breached this contract because ITM failed to ask Innotex to ship back the 2,800 Samsung ML-2250 Developer Rollers and 14,800 Samsung ML-2250 Supply Rollers to a location specified by ITM and failed to pay Innotex.

109. As a result of ITM's breach of contract, Innotex sustained damages in the amount of $34,264.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

110. The Agreement for Samsung ML-2250 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

111.  By breaching the Agreement for Samsung ML-2250, ITM violated Articles 53, 54, 57, 58, 59, and 60 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against ITM in the amount of $34,264.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

## COUNT VI.
## BREACH OF WARRANTY AGAINST ITM (ML-2250)

112.  Innotex incorporates by reference paragraphs 1 through 111.

113.  ITM sold the ML-2250 components to Innotex, and Innotex purchased those components, for the express purpose of assembling the components into whole ML-2250 printer cartridges for sale to ITM or Horei.

114.  By selling the ML-2250 components to Innotex, ITM warranted that the components were fit for the particular purpose for which they were intended. Innotex relied on ITM to furnish suitable goods and to fulfill all warranties, express and implied, regarding the ML-2250 components.

115.  At the time ITM sold the ML-2250 components to Innotex, ITM had reason to know the particular purpose for which the ML-2250 components were intended and that Innotex was relying on ITM's skill and judgment to select and

furnish suitable goods for that purpose. ITM expressly and impliedly warranted that the ML-2250 components would be fit and suitable for that purpose.

116. ITM breached an express and implied warranty of fitness and other warranties with respect to the ML-2250 components that it sold to Innotex because certain of these components were defective making it impossible for Innotex to fill the two purchase orders for ML-2250 cartridges sent by Horei.

117. Innotex timely inspected the ML-2250 components and gave timely notice to ITM regarding the nonconforming nature of the ML-2250 components.

118. As a result of ITM's breaches of warranty regarding the ML-2250 components, Innotex sustained damages including the cost of the ML-2250 components, lost profits, storage costs, interest, and other damages.

119. By breaching express and implied warranties for the ML-2250 components, Horei violated Articles 9 and 35 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against Horei for the cost of the ML-2250 components as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

## COUNT VII.
## BREACH OF CONTRACT AGAINST HOREI (ML-1710)

120. Innotex incorporates by reference paragraphs 1 through 119.

121.   On November 5, 2007, Horei, ITM, and Innotex entered a contract called the "Agreement for Samsung ML-1710." (*See* ML-1710 Agreement, Ex. I.) Under this contract, Horei agreed to send to Innotex "an additional PO [purchase order] for 8,300 pcs ML-1710 cartridges for $15.50 each" for a total cost of $128,650.00. (*Id.*) Innotex agreed to sell the ML-1710 cartridges at this price.

122.   The contract, drafted by ITM and Horei, further states:   "This Agreement cannot be cancelled." (*Id.*)

123.   Horei breached this contract because it never issued a purchase order to Innotex for the ML-1710 cartridges.  As a result of Horei's breach, Innotex sustained damages in the amount of $128,650.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

124.   The Agreement for Samsung ML-1710 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

125.   By breaching the Agreement for Samsung ML-1710 contract, Horei violated Articles 53, 54, 57, 58, 59, and 60 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against Horei in the amount of $128,650.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

## COUNT VIII.
## PROMISSORY ESTOPPEL AGAINST ITM (ML-1710)

126.   Innotex incorporates by reference paragraphs 1 through 125.

127.   Before November 5, 2007, ITM made a promise to Innotex.   The nature of the promise was as follows.   ITM would sell Innotex components necessary to assemble whole ML-1710 printer cartridges.   If Innotex would buy these components from ITM and assemble the components into whole ML-1710 printer cartridges, consuming the components, then ITM or Horei would buy the whole ML-1710 printer cartridges from Innotex at a price above the amount that Innotex paid for the components.

128.   Innotex reasonably relied on this promise, and ITM should have expected that Innotex would have reasonably relied on ITM's promise.   ITM's promise should therefore be enforced to avoid an injustice to Innotex.

129.   Innotex reasonably relied on ITM's promise to its detriment because ITM breached this promise.   Neither ITM nor Horei purchased or paid for the whole ML-1710 printer cartridges as had been agreed between the parties.

130.   Innotex sustained damages including but not limited to the cost of the ML-1710 components, lost profits, storage costs, interest, and other damages.

131.   By breaching its promise to Innotex, ITM violated Article 16 of the Convention, as well as other applicable law, thereby entitling Innotex to damages

and a judgment against ITM for damages including but not limited to the cost of the ML-1710 components, lost profits, storage costs, interest, and other damages.

## COUNT IX.
## BREACH OF CONTRACT AGAINST HOREI (ML-1610)

132. Innotex incorporates by reference paragraphs 1 through 131.

133. On November 5, 2007, Horei, ITM, and Innotex entered a contract called the "Agreement for Samsung ML-1610." (*See* ML-1610 Agreement, Ex. M.) Under this contract, Horei agreed to "send to Innotex a PO [purchase order] for 11,000 pcs ML-1610 cartridges." (*Id.*) At a price of $18.00 each, the total price for these cartridges would be $198,000.00. Innotex agreed to sell the ML-1610 cartridges at this price.

134. The contract, drafted by ITM and Horei, further states: "This Agreement cannot be cancelled." (*Id.*)

135. Horei breached this contract because it never issued a purchase order to Innotex for the ML-1610 cartridges. As a result of Horei's breach, Innotex sustained damages in the amount of $198,000.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

136.   The Agreement for Samsung ML-1610 is a valid and enforceable contract, and all of Innotex's conditions precedent have been performed or waived for this and all other contract claims.

137.   By breaching the Agreement for Samsung ML-1610, Horei violated Articles 53, 54, 57, 58, 59, and 60 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against Horei in the amount of $198,000.00 as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages.

## COUNT X.
## PROMISSORY ESTOPPEL AGAINST ITM (ML-1610)

138.   Innotex incorporates by reference paragraphs 1 through 137.

139.   Before November 5, 2007, ITM made a promise to Innotex.   The nature of the promise was as follows.   ITM would sell Innotex components necessary to assemble whole ML-1610 printer cartridges.   If Innotex would buy these components from ITM and assemble the components into whole ML-1610 printer cartridges, consuming the components, then ITM or Horei would buy the whole ML-1610 printer cartridges from Innotex at a price above the amount that Innotex paid for the components.

32

140. Innotex reasonably relied on this promise, and ITM should have expected that Innotex would have reasonably relied on ITM's promise. ITM's promise should therefore be enforced to avoid an injustice to Innotex.

141. Innotex reasonably relied on ITM's promise to its detriment because ITM breached this promise. Neither ITM nor Horei purchased or paid for the whole ML-1610 printer cartridges as had been agreed between the parties.

142. Innotex sustained damages including but not limited to the cost of the ML-1610 components, lost profits, storage costs, interest, and other damages.

143. By breaching its promise to Innotex, ITM violated Article 16 of the Convention, as well as other applicable law, thereby entitling Innotex to damages and a judgment against ITM for damages including but not limited to the cost of the ML-1610 components, lost profits, storage costs, interest, and other damages.

## COUNT XI.
## PIERCING THE CORPORATE VEIL AGAINST ALL DEFENDANTS

144. Innotex incorporates by reference paragraphs 1 through 143.

145. Horst Eiberger and David Eiberger should be individually liable for the debts, obligations, and other legal responsibilities of ITM and Horei because they do not respect the integrity or corporate formalities of ITM and Horei.

146.   Horst Eiberger and David Eiberger have made ITM and Horei mere instrumentalities for transacting their own affairs.

147.   Horst Eiberger and David Eiberger have an ownership interest in and serve in an executive capacity in more than a dozen corporations, including ITM and Horei.

148.   A number of these corporations, including ITM and Horei, share the same office space, warehouse space, and address at 515 Wharton Circle SW, Atlanta, Georgia 30336-2115.

149.   A number of these corporations, including ITM and Horei, share the same ownership, corporate executives, management, and employees.

150.   A number of these corporations, including ITM and Horei, share the same bookkeeping systems, accounting departments, and accounting records.

151.   A number of these corporations, including ITM and Horei, share office equipment, other equipment, and other business materials and systems.

152.   In effect, these corporations are treated as interchangeable entities.  As such, there is a unity of interest and control between Horst Eiberger, David Eiberger, ITM, and Horei.  In addition, ITM and Horei are also liable for the debts, obligations, and legal responsibilities of the other.

153.   In this case, adhering to the doctrine of corporate separateness would promote injustice and unfairness.

154.   Upon information and belief, many of these corporations, including ITM and Horei, are undercapitalized and have little to no assets.

155.   Upon information and belief, Horst Eiberger and David Eiberger have shifted their assets among themselves, ITM, and Horei and also commingled their assets with those of the corporations, including ITM and Horei.

156.   Upon information and belief, Horst Eiberger and David Eiberger, as the alter egos of ITM and Horei, have been and are conducting, managing, and controlling the affairs of ITM and Horei with respect to the claims in this case.

157.   Upon information and belief, Horst Eiberger and David Eiberger used and continue to use the corporate status of ITM and Horei for the purpose of unjustly attempting to shield themselves from prospective liability.

WHEREFORE, Innotex respectfully prays for relief as follows:

1)   that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex for Horei's breach of contract with respect to the unpaid fees in the amount of $1,722,198.41 as well as additional damages including but not limited to lost profits, interest, and other damages;

2)      that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex for the promissory estoppel claim against ITM with respect to the unpaid fees for damages including but not limited to the cost of the components, lost profits, interest, and other damages;

3)      that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex for Horei's breach of contract with respect to the ML-2250 printer cartridges in the amount of $1,795,726.00, as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages;

4)      that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex in regard to the promissory estoppel claim against ITM with respect to the ML-2250 components for damages including but not limited to the cost of the unused ML-2250 components (believed to be approximately $1,103,454.86), lost profits, storage costs, interest, and other damages;

5)      that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex for ITM's breach

of contract with respect to the ML-2250 rollers in the amount of $34,264.00, as well as additional damages including but not limited to lost profits, storage costs, interest, and other damages;

6)   that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex for ITM's breaches of express and implied warranty with respect to the ML-2250 components for damages including but not limited to the cost of the ML-2250 components and additional damages for lost profits, storage costs, interest, and other damages;

7)   that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex for Horei's breach of contract with respect to the ML-1710 printer cartridges in the amount of $128,650.00, plus additional damages including but not limited to lost profits, storage costs, interest, and other damages;

8)   that judgment be entered in Innotex's favor and against Defendants individually and collectively to compensate Innotex in regard to the promissory estoppel claim against ITM with respect to the ML-1710 components for the cost of the ML-1710 components, lost profits, storage costs, interest, and other damages;

9)    that judgment be entered in Innotex's favor and against Defendants
      individually and collectively to compensate Innotex for Horei's
      breach of contract with respect to the ML-1610 printer cartridges in
      the amount of $198,000.00, plus additional damages including but not
      limited to lost profits, storage costs, interest, and other damages;

10)   that judgment be entered in Innotex's favor and against Defendants
      individually and collectively to compensate Innotex in regard to the
      promissory estoppel claim against ITM with respect to the ML-1610
      components for the cost of the ML-1610 components, lost profits,
      storage costs, interest, and other damages;

11)   that judgment be entered in Innotex's favor and against Defendants
      individually and collectively in the amount of $3,878,838.41, as well
      as lost profits, storage costs, interest, and other damages; and

12)   that Innotex be awarded such other and further relief as may be
      permitted and is appropriate at law or in equity.

Respectfully submitted this 27th day of February 2009.

DLA PIPER LLP (US)

Christopher G. Campbell
Georgia Bar No. 789533
Laura T. Vogel
Georgia Bar No. 131108
One Atlantic Center, Ste. 2800
1201 West Peachtree Street
Atlanta, Georgia  30309-3450
Telephone:  (404) 736-7811
Facsimile:  (404) 682-7811

Attorneys for Plaintiff
Innotex Precision Limited

EAST\42356475.5

39