IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| INNOTEX PRECISION LIMITED,<br><br>  Plaintiff,<br><br>    v.<br><br>HOREI IMAGE PRODUCTS, INC., et al.,<br><br>  Defendants. | CIVIL ACTION FILE<br>NO. 1:09-CV-547-TWT |

ORDER

This is a breach of contract action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 9], which is GRANTED in part and DENIED in part.

I. Background

Plaintiff Innotex Precision Ltd. ("Innotex") is a Hong Kong corporation that distributes and sells printer cartridges, printer supplies, and other printing products. (Compl. ¶ 7.) Defendants Horei Image Products, Inc. ("Horei") and ITM Corp. ("ITM"), both Georgia corporations, are wholesale sellers of printer cartridges and other printing products. (Compl. ¶¶ 8-9.) Defendants Horst Eiberger and David Eiberger are owners and officers of ITM and Horei. (Compl. ¶¶ 10-11.) From May 2006 to January 2008, Horei and ITM contracted to purchase whole printer cartridges from Innotex. (Compl. ¶ 12.) Innotex agreed to purchase the component pieces for

the cartridges from ITM. (Compl. ¶ 12.) Because the cartridges were designed to be compatible with major printer brands, ITM and Horei requested legal opinion letters verifying that the cartridges did not violate any intellectual property rights. (Defs.' Mot. to Dismiss at 3-4.)

According to Innotex, ITM and Horei breached the contracts by refusing to pay the outstanding balance on their accounts with Innotex, and by failing to order the agreed-upon number of printer cartridges. (Compl. ¶¶ 1-3.) ITM and Horei assert that Innotex did not provide legal opinion letters and delivered defective products that infringed on other parties' patents, thereby releasing ITM and Horei from their contractual obligations. (Defs.' Mot. to Dismiss at 6-7.) Innotex sued Horei, ITM, and David and Horst Eiberger under breach of contract, promissory estoppel, and breach of warranty theories, seeking to recover $3,878,838.41 in damages and additional damages for lost profits, storage costs, interest, and other damages. (Compl. ¶ 3.) Horei, ITM, and David and Horst Eiberger now move to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, to join Print-Rite, Innotex's parent company, under Rule 19.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. <u>Ashcroft v. Iqbal</u>, 129 S.Ct.

1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

### III. Discussion

#### A. Claims Under the CISG

Innotex asserts that the United Nations Convention on Contracts for the International Sale of Goods (CISG) and "other applicable law" govern its breach of

contract, promissory estoppel, and breach of warranty claims. The CISG is a multilateral treaty that governs the international sale of goods. Convention on Contracts for the International Sale of Goods, opened for signature Apr. 11, 1980, 19 I.L.M. 671 (1980). It applies to all contracts between parties from "Contracting States." Id. art. 1(1)(a). Generally, it also applies to contracts between parties from non-Contracting States if conflict-of-law rules lead to the application of the law of a Contracting State. Id. art. 1(1)(b). The United States, however, has not adopted the latter provision, and therefore "the only circumstance in which the CISG could apply [in the United States] is if all the parties to the contract were from Contracting States." Impuls I.D. Internacional, S.L. v. Psion-Teklogix Inc., 234 F. Supp. 2d 1267, 1272 (S.D. Fla. 2002).

The parties dispute whether Hong Kong is a Contracting State. Until 1997, Hong Kong was a British Crown Colony. In 1997, it became a Special Administrative Region of the People's Republic of China, which is a signatory to the CISG. Article 93(1) of the CISG allows a Contracting State consisting of more than one territorial unit to "declare that this Convention is to extend to all its territorial units or only to one of more of them." CISG, art. 93(1). To be valid, an Article 93 declaration must be made in writing and deposited with the Secretary General of the United Nations. Id. arts. 97(2), 93(2). Under Article 93(4), if a Contracting State makes no such

declaration, "the Convention is to extend to all territorial units of that State." Id. art. 93(4).

The People's Republic of China has not formally declared under Article 93 that the CISG does not apply to Hong Kong. However, in 1997 the Chinese government deposited with the Secretary General of the United Nations a written declaration announcing the conventions to which China was a party that should apply to Hong Kong upon its transfer. Letter from Qin Huasan, Permanent Representative of the People's Republic of China to the United Nations, to Kofi Annan, Secretary General of the United Nations (June 27, 1997), 36 I.L.M. 1671. The CISG was not included among the 127 listed treaties, indicating that the Chinese government did not intend to extend the CISG to Hong Kong. Id. at Annex I.

This interpretation is consistent with the position held by the Hong Kong Department of Justice, foreign case law, and the majority of relevant scholarship. The International Law Division of the Hong Kong Department of Justice publishes an online list of treaties that are currently in force and applicable to Hong Kong. Hong Kong Department of Justice, International Law Division, List of Treaties in Force and Applicable to the Hong Kong Special Administrative Region, www.legislation.gov.hk/interlaw.htm. The CISG is not included on the list. See id.

Moreover, while no American court has addressed whether Hong Kong is a Contracting State, the Supreme Court of France, the only foreign court to directly address the issue, held that the 1997 declaration satisfied Article 93. Telecommunications Products Case, Cour de Cassation, Premier Chambre Civile [Cass. 1e Civ.] [Supreme Court] Apr. 2, 2008 (Fr.), available at http://cisgw3.law.pace.edu/cases/080402f1.html. Although some Chinese courts have applied the CISG to parties from Hong Kong, they have typically done so based on the parties' explicit or implicit agreement, or as evidence of international trade practice. See Fan Yang, CISG in China and Beyond, 40 UCC L. J. 3 Art. 5 (2008). For example, in Xiamen Trade Co. v. Lian Zhong Co., a Chinese court concluded that the parties had implicitly agreed upon the application of the CISG because they had both relied on it to support their respective positions in the hearings. See Xiao Yongping and Long Weidi, Selected Topics on the Application of the CISG in China, 20 Pace Int'l L. Rev. 61, 79 (2008). In other cases, the Chinese government has simply applied the CISG without explaining its choice of law. See Yang, supra. These cases have been criticized by commentators and are largely unhelpful in determining the status of Hong Kong under the CISG. See Yongping and Weidi, supra at 68-69 (explaining that "the CISG was somehow applied to a contract for the

sale of goods between parties in Hong Kong and Singapore" and noting that such "approaches . . . may invite criticism").

Additionally, the majority of relevant scholarship, including an article published in the Hong Kong Law Journal and an article authored by the Dean of Wuhan University Law School, concludes that Hong Kong is not a Contracting State based on the 1997 Declaration. See Yongping and Weidi, supra at 61 n.2; Michael Bridge, A Law for International Sale of Goods, 37 Hong Kong L.J. 17, 18 (2007); but see Ulrich G. Schroeter, The Status of Hong Kong and Macao Under the United Nations Convention on Contracts for the International Sale of Goods, 16 Pace Int'l L. Rev. 307, 307-32 (2004). Accordingly, consistent with the position held by the Chinese government, the Hong Kong Department of Justice, the Supreme Court of France, and numerous commentators, the Court finds that the CISG does not apply here because Hong Kong is not a Contracting State.

    B.    <u>Claims Under Other Applicable Law</u>

Although the CISG does not apply, Innotex may still seek relief under "other applicable law." Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[w]hile plaintiffs must plead facts sufficient to show entitlement to some relief, they need not specify any particular cause of action in order

to survive a motion to dismiss." Fed. R. Civ. P. 8 Westlaw Commentary. For example, in <u>Alvarez v. Hill</u>, 518 F.3d 1152 (9th Cir. 2008), a prisoner sued prison officials alleging that they substantially burdened his exercise of religion. The district court considered the prisoner's claim under the Free Exercise Clause of the First Amendment and granted summary judgment in favor of the prison officials. The United States Court of Appeals for the Ninth Circuit held that the district court erred by not also considering the prisoner's claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provided an independent statutory ground for relief. <u>Id.</u> at 1157; <u>see also</u> <u>Steinberg v. A Analyst Ltd.</u>, No. 04-60898, 2009 WL 806780, *1 (S.D. Fla. Mar. 26, 2009) (holding that pleading a cause of action under Florida law and "other applicable law" preserves the right to proceed in the event law from another state governs.). Accordingly, the Defendants' Motion to Dismiss the claims against ITM and Horei made under "other applicable law" is denied.

    C.    <u>Claims Against Horst Eiberger and David Eiberger</u>

The Defendants next assert that the claims against Horst and David Eiberger should be dismissed because the allegations in the complaint do not support a plausible claim for relief against the Eibergers as individuals. The Supreme Court's recent decision in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), directs the Court to "begin

[on a motion to dismiss] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Here, Innotex alleges the following:

> 64. Horst Eiberger and David Eiberger should be held individually liable for the debts, obligations, and other legal responsibilities of ITM and Horei. Horst Eiberger and David Eiberger have disregarded the corporate entities of ITM and Horei and have made them mere instrumentalities for transacting their own affairs.
>
> 65. Horst Eiberger and David Eiberger have an ownership interest in and serve in an executive capacity in more than a dozen corporations, including ITM and Horei. In effect, these corporations are treated as interchangeable entities. As such, ITM and Horei are also liable for the debts, obligations, and legal responsibilities of the other.
>
> . . .
>
> 72. Upon information and belief, many of these corporations, including ITM and Horei, are undercapitalized and have little to no assets.
>
> 73. Upon information and belief, Horst Eiberger and David Eiberger have commingled their assets with those of the corporations, including ITM and Horei.

(Compl. ¶¶ 64, 65, 72, 73.) The statements set forth in paragraphs 64, 72, and 73 are not supported by factual allegations. Instead, they appear to be "threadbare recitations" of factors cited by Georgia courts in deciding whether to pierce the corporate veil. See Iqbal, 129 S.Ct. at 1949; see also North American Clearing, Inc. v. Brokerage Computer Systems, Inc., No. 607-cv-1503, 2009 WL 1513389, at *9 (M.D. Fla. May 27, 2009) (dismissing alter ego liability claim where plaintiff alleged

on information and belief that there was evidence of commingling of funds and unity of ownership). Under Iqbal, such statements are "not entitled to the assumption of truth." See Iqbal, 129 S.Ct. at 1950.

In paragraph 65, Innotex alleges that ITM, Horei, and related corporations share personnel, accounting records, equipment, and office and warehouse space. (Compl. ¶¶ 66-69.) However, such allegations, standing alone, do not support a plausible claim for relief against Horst and David Eiberger. As explained by the Georgia Supreme Court:

> [A]llegations that [multiple] corporations have been operated as one business with common ownership, common management, common personnel, and with joint bank accounts and joint profit and loss statements, and that defendants were the sole officers, directors, and stockholders of the . . . corporations . . . would be factors to consider in disregarding the corporate fiction as between the . . . separate corporate entities and treating them as one, but are not sufficient to establish that there is such unity of interest as between the corporations and the defendants to treat them as one.

Farmers Warehouse of Pelham, Inc. v. Collins, 220 Ga. 141, 149 (1964). Because Innotex has not properly alleged facts that support piercing the corporate veil, it has not stated a plausible claim for relief against Horst and David Eiberger. Therefore, the claims against the Eibergers individually are dismissed without prejudice. However, Innotex may seek leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a).

D. <u>Compulsory Joinder of Print-Rite Under Rule 19</u>

For the remaining claims, ITM and Horei seek to join Print-Rite, Innotex's parent company, as a Plaintiff under Federal Rule of Civil Procedure 19. Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

ITM and Horei assert that compulsory joinder is proper under Sections (A), (B)(i), and (B)(ii). First, ITM and Horei assert that the Court cannot afford complete relief if Print-Rite is not joined. The Rule 19 comments counsel:

> In most cases, courts appear to focus on whether they can order "meaningful" relief, generally defined as relief that would achieve the objective of the lawsuit. If the court can grant one form of meaningful relief, it does not matter that other forms of relief are foreclosed.

Fed. R. Civ. P. 19 Westlaw Commentary. This often occurs when the plaintiff seeks equitable relief. For example, in <u>Focus on the Family v. Pinellas Suncoast Transit</u>

Authority, 344 F.3d 1263 (2003), an evangelical group sued a local transit authority that allegedly barred the group from advertising in bus shelters. The advertising agency, who controlled the content of the advertisements, was not a party to the lawsuit. The United States Court of Appeals for the Eleventh Circuit held that the advertising agency was a necessary party because "complete relief [could] not be afforded in [its] absence, as [the transit authority could not] require the running of a particular advertisement in its bus shelters." Id. at 1280. Here, Innotex does not seek equitable relief or any other form of relief that could not be accorded in Print-Rite's absence. To the contrary, if Innotex prevails, the Court will be able to afford it the complete monetary relief it seeks without joining Print-Rite.

Second, ITM and Horei assert that Print-Rite's absence will impair Print-Rite's ability to protect its interests. However, "[i]f a person knows of the action but chooses not to participate, the court should be reluctant to find that person to be a required party under Rule 19 based on the possible harm to its interests." Fed. R. Civ. P. 19 Westlaw Commentary; see also Powers v. City of Seattle, 242 F.R.D. 566, 568 (W.D. Wash. 2007) ("[T]he Court will not second-guess the [absent party's] assessment of its own interests."); Rotec Industries, Inc. v. Aecon Group, Inc., 436 F. Supp. 2d 931, 937 (N.D. Ill. 2006) ("When the outsider is aware of the action and does not claim such an interest, courts typically will not second-guess the decision."); Blumberg v.

Gates, 204 F.R.D. 453, 455 (C.D. Cal. 2001) ("[T]he Court believes that it should, consistent with Rule 19, respect the decision of the absent parties, who have never claimed an interest in the present litigation, to remain on the sidelines since doing so will not prejudice the City."). Here, Print-Rite, as Innotex's parent company, is aware of this action and has not chosen to intervene. The Court will not second guess this decision by mandating joinder under Rule 19(a)(1)(B)(i).

Third, ITM and Horei assert that Print-Rite may, if not joined, assert similar claims against them, thereby subjecting them to inconsistent obligations. Typically, "[t]he inconsistent obligations test is not . . . met when monetary relief is at issue." Fed. R. Civ. P. 19 Westlaw Commentary. However, "a defendant can satisfy Rule 19(a)(1)(B)(ii) by showing that it is at risk of paying twice for the same liability." Id. Here, ITM and Horei argue that Innotex's claim for unpaid fees is based in part on contracts with Print-Rite and therefore subjects them to the risk of inconsistent obligations. Specifically, ITM and Horei offer a Print-Rite purchase order dated May 22, 2007, to show that ITM and Horei contracted with Print-Rite during the relevant time period. However, the accounting summaries attached to the complaint show that the alleged outstanding balance does not cover the May 22 purchase order. (Compl. Ex. B). Therefore, ITM and Horei have not shown that they are at risk of paying twice for the same liability. Accordingly, while permissive joinder under Rule 20

remains a possible option, compulsory joinder of Print-Rite under Rule 19 is not appropriate.

IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 9] is GRANTED in part and DENIED in part.

SO ORDERED, this 17 day of December, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge