IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INNOTEX PRECISION LIMITED,

    Plaintiff,

      v.

                        CIVIL ACTION FILE
                        NO. 1:09-CV-547-TWT

HOREI IMAGE PRODUCTS, INC., et
al.,

    Defendants.

## ORDER

This is a breach of contract action.  It is before the Court on the Plaintiff's

Motion for Partial Summary Judgment [Doc. 86], the Defendants' Motion for

Summary Judgment [Doc. 85], and the Defendants' Motion for Leave to File a

Statement of Additional Facts [Doc. 121].  For the reasons stated below, the Plaintiff's

Motion for Partial Summary Judgment [Doc. 86] is GRANTED in part and DENIED

in part, the Defendants' Motion for Summary Judgment [Doc. 85] is GRANTED in

part and DENIED in part, and the Defendants' Motion for Leave to File a Statement

of Additional Facts [Doc. 121] is GRANTED.

## I. Background

Plaintiff Innotex Precision Limited is a Hong Kong corporation that distributes and sells printer cartridges, printer supplies, and other printing products. (Compl. ¶ 7.) It is a subsidiary of Print-Rite Holdings Limited. Defendants Horei Image Products, Inc. and ITM Corp. are wholesale sellers of printer cartridges and other printing products. (Compl. ¶¶ 8-9.) From May 2006 to January 2008, Horei and ITM contracted to purchase printer cartridges from Innotex. (Compl. ¶ 12.) Innotex agreed to purchase the component parts for the cartridges from ITM. (Compl. ¶ 12.) Because the cartridges were designed to be compatible with major printer brands, ITM and Horei requested legal opinion letters verifying that the cartridges did not violate any intellectual property rights.

According to Innotex, ITM and Horei breached the contracts by refusing to pay the outstanding balance on their accounts with Innotex and by failing to order the agreed-upon number of printer cartridges. (Compl. ¶¶ 1-3.) ITM and Horei say that Innotex did not provide legal opinion letters, did not ship the agreed upon number of cartridges, and delivered defective products that infringed on other parties' patents, thereby releasing ITM and Horei from their contractual obligations. Innotex sued ITM and Horei under breach of contract, promissory estoppel, and breach of warranty theories, seeking to recover $3,878,838.41 in damages and additional damages for lost

profits, storage costs, interest, and other costs.  (Compl. ¶ 3.)  ITM and Horei filed

counterclaims against Innotex and Print-Rite Holdings alleging breach of contract and

breach of warranty.  All parties now move for summary judgment.

## II.   Motion for Leave to File a Statement of Additional Facts

ITM and Horei did not file a Statement of Additional Facts with their brief in

response to the Plaintiff's Motion for Partial Summary Judgment.  Pursuant to Local

Rule 56.1(B)(2)(b), Innotex asks the Court in its reply brief not to consider any fact

in the Defendants' response brief that was not set forth in their Response to the

Plaintiff's Statement of Material Facts.  ITM and Horei now move for leave to file a

Statement of Additional Facts.  Innotex says that it was prejudiced by the Defendants'

introduction of new facts not accompanied by a corresponding Statement of

Additional Facts.  However, each fact was set forth in the Defendants' response brief

with a proper citation to the record.  Accordingly, there is no reason that Innotex

should have been prejudiced in any way.  Therefore, the Defendants' Motion for

Leave to File a Statement of Additional Facts is granted.  The Court will consider the

facts set forth in the ITM and Horei's response brief and reiterated in the Statement

of Additional Facts attached to its motion.

### III.  Motions for Summary Judgment

### A.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### B.  Innotex's Claim for Unpaid Fees

In Counts I and II, Innotex claims that ITM and Horei owe $1.7 million in unpaid fees.  In March 2008, representatives of Horei, ITM, Innotex, and Print-Rite met in Atlanta to review past purchase orders and invoices.  The representatives calculated the total outstanding balances of each party without adjusting for the return of any allegedly defective or infringing products.  They concluded that Innotex owed ITM $3,604,896.28; ITM owed Innotex $2,896,966.49; and Horei owed Innotex

$2,430,128.20. (Compl. ¶ 14.) Innotex says that it is entitled to summary judgment on the combined outstanding balance because the figures are undisputed. However, deposition testimony shows that the figures were not intended to be a final agreement on the parties' outstanding balances. (See Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. C at 97.) Accordingly, Innotex is not entitled to summary judgment on Counts I and II.

Horei also moves for summary judgment on parts of Innotex's claim for unpaid fees. First, it says that it is entitled to summary judgment on Innotex's claim for $122,754 in allegedly defective TN-460 and TN-580 cartridges. On September 11, 2008, Innotex's counsel picked up these cartridges from Horei's facilities. Innotex admits that it has not deducted this amount from its unpaid fees claim. Instead, it says that it picked up the cartridges as a "gesture of goodwill" and argues that it never agreed to deduct the cost of the cartridges from the $1.7 million balance. However, in a May 2008 letter to Horst Eiberger, Innotex's counsel clearly acknowledged and affirmed the agreement:

> Innotex has already agreed to accept return of 6,000 to 7,000 of these units and give ITM/Horei a credit in the amount of US $13.90/unit for the TN460 units and US $14.08/unit for the TN580 units as a result. This agreement was confirmed in December 2007; but was not taken into account when determining the US $1,722,198.41 net amount due to Innotex because ITM/Horei [have] not yet returned these units to Innotex.

. . . Innotex will accept the return of these units and allow ITM/Horei a corresponding credit not to exceed a total amount of US $125,648.26. (Reply Br. in Supp. of Defs.' Mot. for Summ. J., Ex. F.)  Innotex offers no evidence to dispute the existence of this agreement.  Accordingly, ITM and Horei are entitled to summary judgment on Innotex's claim for unpaid fees with respect to the $122,754 in allegedly defective TN-460 and TN-580 cartridges.

Horei also moves for summary judgment on Innotex's claim for $1,315,887 in allegedly defective Samsung ML-1210 cartridges.  According to Horei, Innotex said in Fall 2006 that the ML-1210 and ML-1710 cartridges had a patent problem with the doctor blade.  Horei says that it told Innotex to "cancel all production of the 1210 and 1710" cartridges until "all updates and modifications [could] be made."  (Br. in Supp. of Defs.' Mot. for Summ. J., Ex. E at ¶¶ 8, 12, Ex. N, Ex. 64.)  According to Horei, Innotex said that it would replace the doctor blades on the existing ML-1210 cartridges with patent-free blades.  However, Innotex never replaced the allegedly infringing blades.  Horei says that the parties eventually agreed that Horei would return the ML-1210 cartridges to Innotex for a refund.  (Br. in Supp. of Defs.' Mot. for Summ. J., Ex. E at ¶ 9.)  Ian Goddard of Innotex says that he does not remember this agreement.

Horei says that it is entitled to summary judgment because it effectively revoked its acceptance of the ML-1210 cartridges after giving Innotex an opportunity

to cure the defect.  Pursuant to O.C.G.A. § 11-2-608, a buyer may revoke his acceptance of goods whose nonconformity substantially impairs their value if he accepted the goods on the reasonable assumption that the nonconformity would be cured and it has not been seasonably cured.  Horei has the burden of establishing that the goods were nonconforming.  Innotex says that Horei cannot show that the ML-1210 doctor blade violated intellectual property rights without expert testimony.  However, expert testimony is not always necessary to show patent infringement.  Kyocera Wireless Co. v. President Electronics, Ltd., 179 Fed. Appx. 53, 54 (Fed. Cir. 2006) ("[E]xpert evidence is not always necessary to resolve questions of patent infringement."); Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1369 (Fed. Cir. 2004) ("In many patent cases expert testimony will not be necessary because the technology will be easily understandable without the need for expert explanatory testimony.").

Innotex has not met its burden on summary judgment of showing the Court that the doctor blade technology is so complex as to require expert testimony to prove infringement.  Moreover, Horei has offered other evidence of infringement in the form of affidavits and emails that reference patent problems with the ML-1210 doctor blade, including emails from a Print-Rite engineer.  (See Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. T.)  Whether this evidence is sufficient to satisfy

Horei's burden is a question for the jury, and a reasonable jury could decide either way.  Accordingly, Horei is not entitled to summary judgment on Innotex's claim for $1,315,887 in allegedly infringing ML-1210 cartridges.

C.      Innotex's Claims for Breach of Close-Out Contracts

In Counts III through X, Innotex claims that ITM and Horei breached "close-out" contracts relating to Samsung ML-1610, ML-1710, and ML-2250 cartridges. The purpose of the close-out contracts was to allow Innotex to use the excess component parts it had on hand.  Under the contracts, Horei promised to order extra Samsung cartridges at lower prices so that Innotex could use its remaining supply of components.  The parties each claim that the other breached these contracts.  Innotex moves for summary judgment on its breach of contract claims relating to the ML-1710 and ML-2250 contracts.  ITM and Horei move for summary judgment on Innotex's breach of contract and promissory estoppel claims relating to the ML-1610, ML-1710, and ML-2250 contracts.

1.      Breach of Contract Claims Against Horei

a.      ML-1610 Contract

The ML-1610 close-out contract required Horei to order 11,000 ML-1610 cartridges.  According to Horei, the parties reached an oral agreement to this effect on September 12, 2007.  It is undisputed that Horei issued a purchase order for 11,000

ML-1610 cartridges the following day.   Approximately three weeks later, on November 5, the parties executed a written agreement requiring Horei to order 11,000 ML-1610 cartridges.   The parties dispute whether Horei's September 13 purchase order satisfies the terms of the November 5 agreement.   Horei says that it issued the purchase order in response to the oral agreement reached on September 12 and officially executed on November 5.   Innotex says that the November 5 contract contemplated that an additional purchase order would be issued after November 5. Both parties offer evidence to support their position, and a reasonable jury could interpret the agreement either way.   Accordingly, Horei is not entitled to summary judgment on Innotex's ML-1610 breach of contract claim.

### b.   ML-1710 Contract

The ML-1710 close-out contract required Innotex to send Horei 56,000 ML-1710 cartridges and obligated Horei to order 8,300 more ML-1710 cartridges.   Innotex sent Horei 55,200 cartridges, but it never shipped the additional 800.   In response, Horei refused to order the additional 8,300 cartridges.   Innotex says that Horei breached the contract by failing to order more cartridges.   Horei says that Innotex's initial breach excused it from its further obligations under the contract.

Under Georgia law, if one party substantially breaches a material, dependent covenant in a contract, the other party is excused from further performance. O.C.G.A.

§ 13-1-7(a).  Here, the parties dispute whether Innotex substantially breached the agreement.  It sent 55,200 cartridges instead of 56,000 - or 98.57% of the agreed-upon amount.  This is a nonconforming tender under Article 2 of the Georgia Commercial Code that may permit Horei to recover damages for nondelivery.  However, it is not a substantial breach that allows Horei to avoid its remaining obligations under the contract.

Still, Horei argues that it is entitled to summary judgment because Innotex cannot prove damages.  Innotex is seeking lost profits, which are calculated under Georgia law by subtracting expenses from the contract price.  Horei says that Innotex cannot show that it lost any profits.  The ML-1710 contract price was $15.50 per cartridge.  (Compl., Ex. I.)  The evidence shows that the materials and manufacturing costs totaled $20.10 per cartridge.  (Br. in Supp. of Defs.' Mot. for Summ. J., Ex. 8, Ex. E at ¶ 16, Ex. A at 101.)  Accordingly, Innotex lost $4.60 per cartridge.  (See Br. in Supp. of Defs.' Mot. for Summ. J., Ex. A at 100-101.)  Innotex does not dispute these numbers.  Instead, it says that its expenses should not include the cost of toner, developer rollers, supply rollers, primary charge rollers, opc's, and toner because Innotex already had these components on hand.

The Court finds no case in Georgia or any other jurisdiction permitting this interpretation.  Nor would such an interpretation make sense.  It would allow Innotex

to recover the cost of the component parts while keeping them on hand for use in later transactions, thereby placing Innotex in a better position than it would have been in had the contract not been breached.  Accordingly, Horei is correct that Innotex has no lost profits to recover.  See 24 Williston on Contracts § 64:11 (4th ed.) ("If the total cost would exceed the promised price, profits as an element of damage are excluded, since the plaintiff would have lost money had there been no breach, and no profits would have been earned.").  Because Innotex has not identified any other form of damages it suffered, Horei is entitled to summary judgment on Innotex's breach of contract claim with respect to the ML-1710 contract.

c.   ML-2250 Contract

The ML-2250 close-out contract required Horei to issue ten purchase orders for ML-2250 cartridges on certain dates.  The first four purchase orders were to be for 11,000 cartridges each.  Horei ordered the first 22,000 cartridges but only received 6,700 cartridges.  It did not issue any additional purchase orders.  It says that it was excused from doing so because Innotex substantially breached the contract.  Innotex, in turn, says that it was excused from sending the other 15,300 cartridges because ITM supplied defective component parts, making compliance impossible.

Under Georgia law, a seller is excused from performing his obligations under a contract if his "performance as agreed has been made impracticable by the

occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made."  O.C.G.A. § 11-2-615.  The parties dispute whether Innotex's failure to ship 15,300 cartridges is excused under the provision.  Either way, Horei is entitled to summary judgment.  Under the Georgia Commercial Code, when a seller notifies a buyer of a "material or indefinite delay" due to unanticipated conditions, the buyer is entitled to terminate the contract.  O.C.G.A. § 11-2-616.  Accordingly, Horei was not obligated to order the additional cartridges either way.

Moreover, Innotex cannot show that it suffered damages because of Horei's alleged breach.  The ML-2250 contract price was $19.54 per cartridge.  (Compl., Ex. D.)  The evidence shows that the materials and manufacturing costs totaled $22.51 per cartridge.   (Br. in Supp. of Defs.' Mot. for Summ. J., Ex. 6, Ex. E at ¶ 16, Ex. A at 74.)  Accordingly, Innotex lost $2.97 per cartridge.  Again, Innotex argues that its expenses should not include the cost of toner, developer rollers, supply rollers, primary charge rollers, opc's, and toner because Innotex already had these components on hand.  This argument fails for the reasons addressed above.  Therefore, Innotex cannot show any lost profits.  Because it does not seek any other form of damages, Horei is entitled to summary judgment on Innotex's breach of contract claim with respect to the ML-2250 cartridges.

2.  <u>Breach of Contract Claims Against ITM</u>

In Count V, Innotex claims that ITM breached the ML-2250 close-out contract. As noted, the ML-2250 contract required Horei to issue ten purchase orders for ML-2250 cartridges on certain dates. After Innotex produced the first 44,000 cartridges, ITM was to issue a credit memo to Innotex for the remaining cartridge components it had "on hand." Shortly thereafter, Innotex was to buy back most of the components from ITM. It was not, however, required to buy back the unmatched component sets, which totaled approximately $34,264.

ITM never issued the credit memo, and Innotex now seeks $34,264 in damages. ITM says that it was excused from performing because Innotex produced only 6,700 of the first 44,000 cartridges. Whether ITM is excused depends on whether ITM and Innotex's promises were dependent or independent. If a party substantially breaches a material, dependent promise, the other party is excused from future performance. O.C.G.A. § 13-1-7(a). On the other hand, if a party breaches an independent promise, the other party must still perform its obligations under the contract. Id.

Whether a promise is dependent or independent depends on the intent of the parties. O.C.G.A. § 13-1-7(b). If there is no evidence of intent, Georgia courts typically consider whether the promises "go to the whole consideration on both sides" or whether they "go to a part only." Beaulieu Group, LLC v. S&S Mills, Inc., 292 Ga. App. 455, 457 (2008). If each party's promise affords the sole consideration to the

other, Georgia courts will construe the promises as dependent absent a clear indication that the parties intended them to be independent.  Brenard Mfg. Co. v. Kingston Supply Co., 22 Ga. App. 280, 280 (1918).

Here, ITM and Innotex's promises are each the sole consideration to the other. ITM's only obligation under the ML-2250 contract was to buy back - in a somewhat roundabout transaction - unmatched component sets worth $34,264.  Innotex's only obligation under the contract was to ship Horei ML-2250 cartridges at the agreed-upon price.  Because there is no evidence that the parties intended their promises to be independent, the Court will construe them as dependent.  Therefore, Innotex's failure to ship the first 44,000 cartridges to Horei excuses ITM's performance.

Innotex also says that it is entitled to summary judgment because its nonperformance was excused under O.C.G.A. § 11-2-615.  For the reasons addressed in Section III(C)(1)(c), this argument is unpersuasive.  Accordingly, ITM is entitled to summary judgment on Innotex's breach of contract claim with respect to the ML-2250 contract.

### 3. Promissory Estoppel Claims Against ITM

Innotex also claims that ITM is liable under a promissory estoppel theory for breaching the ML-1610, ML-1710, and ML-2250 close-out agreements.  Innotex says that ITM promised that ITM or Horei would purchase ML-1610, ML-1710, and ML-

2250 cartridges from Innotex if Innotex would buy the component parts for these cartridges from ITM.  These claims fail for two reasons.  First, ITM's promise was later executed as a contract between Horei and Innotex.   Under Georgia law, promissory estoppel is not available "where a plaintiff seeks to enforce an underlying contract which is reduced to writing."  Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1326 (11th Cir. 2005) (citing Bank of Dade v. Reeves, 257 Ga. 51 (1987)). Here, neither party disputes that Horei agreed to purchase a set quantity of cartridges from Innotex in the ML-1610, ML-1710, and ML-2250 close-out contracts. Therefore, the doctrine of promissory estoppel does not apply.

Second, ITM's promise is unenforceably vague.   Georgia courts have consistently held that plaintiffs may not enforce vague or indefinite promises under the promissory estoppel doctrine.  For example, in Georgia Investments International, Inc. v. Branch Banking and Trust Co., 305 Ga. App. 673 (2010), the Georgia Court of Appeals found that a promise to make a loan for a certain duration was unenforceable because the promise did not contain other material terms such as the interest rate.  Id. at 664; see also Mooney v. Mooney, 245 Ga. App. 780, 783 (2000) ("[Promissory] [e]stoppel does not apply . . . to vague, indefinite promises."); Bridges v. Reliance Trust Co., 205 Ga. App. 400, 403 (1992) (affirming summary judgment on promissory estoppel claim because defendant's promise to make loan with no

specification of interest rate or maturity date was "unenforceably vague").  Here, Innotex does not allege that ITM's promise contained any terms relating to the price or quantity of cartridges to be purchased.  Without these material terms, the promise cannot be enforced.  Accordingly, ITM is entitled to summary judgment on Innotex's promissory estoppel claims.

      D.    <u>ITM and Horei's Product Defect Claims</u>

     In Counts I through IV of their counterclaims, ITM and Horei allege that Innotex breached the close-out contracts and various express and implied warranties by delivering cartridges that did not fit into printers, did not make proper copies, or leaked toner.  Innotex says that ITM and Horei cannot prove these claims without expert testimony.  However, in <u>McDonald v. Mazda Motors of America, Inc.</u>, 269 Ga. App. 62 (2004), the Georgia Court of Appeals rejected a similar argument.  There, the plaintiff purchased a new car and noticed a rattling sound under the hood.  He took the car to an authorized repair shop, where the mechanic verified the rattling noise but did not fix it.  After several attempts to fix the noise, the plaintiff sued the manufacturer for breach of implied warranty.  The trial court granted summary judgment to the car manufacturer because the plaintiff did not offer expert testimony to show that the car was defective and that the defect existed from the time of manufacture.  The Georgia

Court of Appeals reversed the decision, holding that a breach of warranty claim may be proven without expert testimony.  Id. at 68.

Here, ITM and Horei offer other evidence that the cartridges at issue were defective.  For example, they point to customer complaints, deposition testimony, and emails acknowledging defects associated with the HP 1338A, Samsung ML-1710, Brother TN-460, Brother TN-580, Samsung ML-2250, Canon NP-1215, Canon NP 4050, HP 8061X, HP 4127X, and Samsung ML-1210 cartridges.  (See Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. C at 63 (regarding fit problems); Ex. A at 80 (same); Ex. 72 (same); Ex. E (regarding leakage problems with 1338A/4200 cartridges); Ex. F at 82-83, 86-89 (same); Ex. A at 59, 67-68  (regarding leakage problems with ML-1710 cartridges); Ex. 61 (same); Ex. B at ¶ 20 (regarding leakage problems with TN-460/TN-580 cartridges); Ex. I (regarding leakage problems with ML-2250 cartridges); Ex. J (regarding copy image problems with NP-1215/NP4050 cartridges); Ex. K (regarding copy image problems with NP-1215/NP4050 cartridges); Ex. A. at 131-32 (regarding copy image problems with NP-1215/NP4050 cartridges); Ex. N (regarding potential wiper blade problems with 8061X/4127X cartridges); Ex. Z (regarding copy image problems).)  They do not individually address the product defects associated with the remaining cartridges.  However, they point to sworn interrogatory responses by Horst Eiberger identifying the remaining cartridges and

noting that they print poor quality images.  (Defs.' Surreply in Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. 4.)  Based on this evidence, a reasonable jury could infer that the cartridges were defective and that the defects existed from the time of manufacture. Accordingly, Innotex is not entitled to summary judgment on these claims.

      E.     ITM and Horei's Intellectual Property Counterclaims

Innotex also moves for summary judgment on ITM and Horei's breach of contract and breach of warranty claims relating to intellectual property issues.

      1.     Breach of Contract Claim

Innotex sells cartridges that are compatible with major printer brands. Accordingly, patent infringement claims are a potential problem.  ITM and Horei say that Innotex promised to provide intellectual property opinion letters and corresponding warranties verifying that the cartridges did not violate any intellectual property rights.  It is undisputed that Innotex never provided these opinion letters or warranties.  Still, Innotex says that it is entitled to summary judgment on four grounds.

First, Innotex says that it is entitled to summary judgment because ITM and Horei have no expert testimony showing that the cartridges violated any intellectual property rights.  However, expert testimony showing actual infringement is unnecessary here.  Innotex knew that failure to provide intellectual property opinion

letters and corresponding warranties would impair ITM and Horei's ability to sell the cartridges to large companies.  (Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. A at 37.)  Accordingly, whether the cartridges were actually infringing is not a dispositive issue on this claim.

Second, Innotex says that it is entitled to summary judgment because there is not enough evidence of an agreement.  However, ITM and Horei provide deposition testimony, affidavits, and emails suggesting that an Innotex representative agreed to provide intellectual property opinion letters and corresponding warranties.  (Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., ¶ 7, Ex. B at Ex. 48, 49, and 50.) Based on this evidence, a reasonable jury could find that the parties had an agreement.

Third, Innotex says that it is entitled to summary judgment because any promise that it made was not supported by adequate consideration.  However, Horei says that it agreed to purchase the Innotex cartridges based on Innotex's promise to provide intellectual property opinion letters.   This exchange of promises constitutes consideration.  Moreover, even if Innotex agreed to provide opinion letters after the parties reached an initial agreement, the later agreement is still valid.  The Georgia Commercial Code provides that an agreement modifying the original contract does not require consideration to be binding.  O.C.G.A. § 11-2-209.

Finally, Innotex says that it is entitled to summary judgment because ITM and Horei did not suffer any damages.   However, Innotex's own representative acknowledged that the ML-1210 cartridges could not be sold to large customers without intellectual property opinion letters.   (Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. A at 37.)   This evidence is enough to allow a reasonable jury to find damages.   Accordingly, Innotex is not entitled to summary judgment on ITM and Horei's breach of contract claim as it relates to the intellectual property opinion letters and corresponding warranties.

### 2.   Breach of Warranty Claims

Innotex also moves for summary judgment on ITM and Horei's breach of warranty claims as they relate to intellectual property issues.   ITM and Horei say that Innotex breached an express warranty against infringement and a statutory warranty against infringement by selling ITM and Horei ML-1210 cartridges with an infringing doctor blade.   For the reasons addressed in Section III(B), whether the ML-1210 cartridge had an infringing doctor blade is a question for the jury.   Although ITM and Horei have no expert testimony showing that the doctor blade infringed an existing patent, there is enough other evidence of infringement to support ITM and Horei's breach of warranty claims.

### F.   ITM and Horei's Request for Attorneys' Fees

In Count VI of the Defendants' counterclaims, ITM and Horei ask for attorneys' fees under O.C.G.A. § 13-6-11.  Section 13-6-11 allows a plaintiff to recover attorneys' fees where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.  Bad faith implies "a dishonest purpose" and a "conscious doing of wrong."  Davis v. Walker, 288 Ga. App. 820, 825-26 (2007).  Here, ITM and Horei say that Innotex acted in bad faith by repeatedly sending defective cartridges, by failing to notify Horei of product recalls, and by "stringing along" Horei representatives for over a year while promising that intellectual property attorney opinion letters were forthcoming.  Whether this amounts to bad faith under O.C.G.A. 13-6-11 is a question for the jury, and a reasonable jury could decide either way.  See Spring Lake Property Owners Ass'n, Inc. v. Peacock, 260 Ga. 80, 81 (1990).  Accordingly, Innotex is not entitled to summary judgment on ITM and Horei's request for attorneys' fees.

G.    ITM and Horei's Counterclaims Against Print-Rite Holdings

Print-Rite Holdings moves for summary judgment on each count of ITM and Horei's counterclaims.  It says that it was not a party to any of the agreements at issue.  ITM and Horei acknowledge that it is not listed on any purchase order or invoice but argue that it was a party to a "broader agreement" that required it to manufacture the printer cartridges that Innotex sold to Horei.  There is no evidence that this is the case.

Print-Rite Holdings is a holding company that does not develop or manufacture any products. Although ITM and Horei reference a number of communications with "Print-Rite" employees, these employees appear to work for Print-Rite subsidiaries or Print-Rite Management Group, not Print-Rite Holdings.

ITM and Horei also say that Print-Rite Holdings is liable for breach of contract and breach of warranty under an agency theory because Innotex is controlled by and accountable to Print-Rite Holdings. They note that Innotex has only five employees and does not develop or manufacture printer cartridges for itself. Instead, it markets and sells cartridges produced by Print-Rite subsidiaries, with whom it communicates via an "internal transfer system." Its employees report to Print-Rite Management Group, and product returns must be authorized by "the people that built them" - presumably, the manufacturing subsidiary or Print-Rite Management Group. However, this evidence does not establish the nature of the relationship between Innotex and Print-Rite Holdings. Accordingly, ITM and Horei cannot show that Innotex served as an agent of Print-Rite Holdings.

Finally, ITM and Horei say that Print-Rite Holdings is liable for breach of warranty because it is a manufacturer in privity with Innotex. However, as noted, Print-Rite Holdings did not manufacture any of the cartridges at issue. Instead, it appears that Tian Wei, a Chinese subsidiary of Print-Rite Holdings, manufactured the

cartridges.  Accordingly, Print-Rite Holdings is entitled to summary judgment on each count of ITM and Horei's counterclaims.

## IV.   Conclusion

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment [Doc. 86] is GRANTED in part and DENIED in part, the Defendants' Motion for Summary Judgment [Doc. 85] is GRANTED in part and DENIED in part, and the Defendants' Motion for Leave to File a Statement of Additional Facts [Doc. 121] is GRANTED.

SO ORDERED, this 3 day of December, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge